NOT DESIGNATED FOR PUBLICATION

No. 122,900

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEVONTA DEMARQCUS BAGLEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Opinion filed February 18, 2022. Affirmed.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, for appellant.

*David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: A jury convicted Devonta Demarqcus Bagley of aggravated criminal sodomy and aggravated burglary that occurred at a fraternity house at Kansas State University. On appeal, Bagley asserts several trial errors and asks that we reverse his convictions. In a cross-appeal, the State asserts that the district court erred in determining Bagley's criminal history score. As a result, the State asks that we vacate Bagley's sentence and remand this case to the district court for resentencing. Based on our review of the record, we do not find any reversible error. Thus, we affirm Bagley's convictions and sentence.

1

Bagley is a former student at Kansas State University who graduated in the spring of 2017. While he was a college student, he was a member of the Tau Kappa Epsilon fraternity. After receiving his undergraduate degree from Kansas State, Bagley moved to Missouri and attended graduate school at the University of Missouri-St. Louis. In early September of 2017, Bagley returned to Manhattan to visit friends and to attend a Kansas State football game.

A.G.—who was a student at Kansas State University—was a member of Sigma Chi and lived in the fraternity house with approximately 55 other members. A.G. shared a room on the first floor with two roommates, Ryan and T.J. The three men lived in a suite consisting of a common area with two windows and a small adjoining room for sleeping with one window. The sleeping room contained two sets of connected bunk beds. A.G. slept in one of the bottom bunks and Ryan slept in the other bunk. T.J. slept on the top bunk above A.G. The men hung sheets on their bunks for privacy.

On the night of Friday, September 8, 2017, the Sigma Chi fraternity held a toga party. A.G. and his roommates each brought dates to the party. All three of the men and their dates consumed alcohol at the party. When the party ended around 1:30 a.m. on the morning of September 9, 2017, both A.G. and T.J.'s dates left the fraternity house. However, Ryan's date stayed and slept in his bunk.

Around 6 a.m., A.G. woke up to find a man performing oral sex on him. According to A.G., he pushed the man off him and told him to get out of his bunk. When A.G. asked the man who he was, the man responded that his name was "Dillon." The man then left through the common area. Initially, A.G. wondered if he had been dreaming and attempted to see if he could find the man in the fraternity house. When he did not find the man, A.G. went back to his room and went to sleep for about an hour more.

After A.G. woke up again, he told his roommates what had occurred. Around 9 a.m., the three men decided to check the fraternity's video security system to see if they could verify what had happened. Although there were no cameras in their suite, there were cameras in the hallways, foyer, parking lot, and basement of the fraternity house. Reviewing the security videos, the three men were able to confirm that an unknown man had exited their suite around 6:10 a.m. Meanwhile, another fraternity member told them that the same man had also entered his room during the night, which the security video also confirmed.

Ryan called the Riley County Police Department to report the incident, and the police put portions of the videos taken from the Sigma Chi security cameras on social media and requested assistance in identifying the suspect. The man was soon identified as Bagley. Although he initially denied being at the fraternity house when contacted by the police, Bagley admitted at trial that he had been in A.G.'s room and had engaged in oral sex with him.

The State charged Bagley with aggravated criminal sodomy and aggravated burglary. Because Bagley was also being prosecuted in Missouri on charges of sodomy, burglary, and armed criminal action, the Kansas case was stayed. In May 2019, Bagley was convicted in Missouri of two charges of sodomy or attempted sodomy in the first degree, two charges of burglary in the first degree, and two charges of armed criminal action. Thereafter, the stay of the Kansas action was lifted.

On March 3, 2020, the district court commenced a three-day jury trial. At trial, the State called A.G., A.G.'s girlfriend, Ryan, Ryan's girlfriend, T.J., several officers from the Riley County Police Department, and a number of other witnesses. In addition, the State introduced 41 exhibits into evidence including video taken from the Sigma Chi security cameras.

3

Bagley testified in his own defense. According to Bagley, his interaction with A.G. was consensual. Specifically, Bagley testified that he met A.G. on Tinder in the spring of 2017 and had previously engaged in sexual relations with him. However, A.G. denied each of these assertions in his own trial testimony.

Bagley testified that he had informed A.G. by either Snapchat or Tinder that he would be travelling to Manhattan for the football game and the two men arranged to meet in A.G.'s sleeping room after his roommates went to sleep. Bagley also testified that he arrived at the Sigma Chi fraternity house between 4 and 5 a.m., parked on the street, and entered A.G.'s room through a window. Further, Bagley testified that upon entering the sleeper room, he found a woman with A.G. in his bunk. According to Bagley, after the three talked for a little while, both he and the woman performed oral sex on A.G.

Bagley testified that he left the sleeping room to "snoop" around the fraternity house and ultimately left through the same window that he had entered. Bagley asserted that he did not initially admit to being in the fraternity house because he did not want to reveal either his sexual orientation or that of A.G. Nevertheless, Bagley admitted that he had several "discreet relationships" with other men while he was a student at Kansas State. According to Bagley, he could not understand why A.G. was upset.

After deliberation, the jury convicted Bagley on each count. On April 27, 2020, the district court sentenced Bagley to consecutive prison terms of 246 months for aggravated criminal sodomy and 43 months for aggravated burglary, amounting to a controlling sentence of 289 months. In addition, the district court ordered lifetime postrelease supervision. The district court also ordered that the Kansas sentence be served consecutive to Bagley's sentences in Missouri. Thereafter, Bagley filed a timely notice of appeal, and the State filed a timely cross-appeal.

4

On appeal, Bagley raises four issues. First, whether the district court erred by allowing the State to bolster A.G.'s trial testimony by introducing evidence of prior consistent statements made by A.G. Second, whether the district court erred by allowing the State to introduce evidence that was discovered during an unrelated criminal investigation in Missouri. Third, whether the State committed prosecutorial error during closing argument. Fourth, whether there was cumulative error that warrants reversal of Bagley's convictions. Furthermore, in its cross-appeal, the State raises the issue whether the district court improperly scored Bagley's criminal history.

*Prior Consistent Statements*

Bagley contends that the district court erred by allowing the State to introduce evidence of prior consistent statements made by A.G. to bolster his testimony. In particular, Bagley argues that it was not appropriate for the State to introduce evidence of A.G.'s prior statements through the testimony of A.G.'s roommates and the investigating law enforcement officer. Each of these witnesses testified prior to A.G. being called as a witness. In response, the State argues that the testimony of A.G.'s roommates and the investigating officer was not presented to bolster the victim's testimony.

Whether a district court erred by failing to exclude prior consistent statements is reviewed for abuse of discretion. *State v. Gaona*, 293 Kan. 930, 956, 270 P.3d 1165 (2012). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The person claiming an abuse of discretion—in this case Bagley—has the burden of proof. *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021).

Generally, "prior statements of a witness, consistent with his testimony at trial, are not admissible in corroboration of his testimony unless the witness has been impeached and then only for the purpose of rehabilitating him." *State v. Whitesell*, 270 Kan. 259, 290, 13 P.3d 887 (2000). However, there is a distinction between offering the evidence merely to corroborate another witness' testimony and providing the evidence for a relevant evidentiary purpose. See 270 Kan. at 290. In a rape prosecution, however, evidence of the complaint of the prosecutrix is permitted for the express purpose of corroborating her testimony through the testimony of other witnesses. See *State v. Washington*, 226 Kan. 768, 770, 602 P.2d 1377 (1979). Furthermore, there is an exception to the general rule regarding exclusion of prior consistent statements in cases involving allegations of sexual assault. See 226 Kan. at 770; see also *State v. Kackley*, 32 Kan. App. 2d 927, 935, 92 P.3d 1128 (2004) (extending exception to cases involving sexual abuse of children).

Here, Bagley was charged with aggravated criminal sodomy, which is a type of sexual assault. Moreover, even though A.G. had not yet testified when the testimony regarding the prior consistent statements was presented, defense counsel had already attacked the victim's credibility in the opening statement, saying: "[W]e're going to be able to see why someone in [A.G.'s] shoes would report something as a sexual assault when in fact it was nothing of the sort." Accordingly, because Kansas allows corroborating testimony in sexual assault prosecutions, we do not find that the district court abused its discretion in admitting the testimony of A.G.'s roommates or the investigating officer.

Based on our review of the record, we also find that the testimony presented under oath by Ryan, T.J., and the investigating officer was not offered to unfairly corroborate A.G.'s testimony but was offered primarily as substantive evidence of the victim's state of mind. In Kansas, a prior statement of a testifying witness may be admitted as substantive

6

evidence if it has sufficient probative value to be admitted even when the credibility of the witness has not yet been attacked. K.S.A. 2020 Supp. 60-460(a) provides:

> "Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except:

> "(a) A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by the declarant while testifying as a witness."

In other words, if a witness is available and subject to cross-examination about prior statements, K.S.A. 2020 Supp. 60-460(a) does not differentiate between prior consistent statements and prior inconsistent statements.

Here, it is undisputed that A.G. was present at trial and was subjected to cross-examination by defense counsel. The record reflects that A.G. testified at length regarding the sexual assault. In particular, A.G. testified about the events in the early morning hours of September 9, 2017. This testimony included informing his roommates—who had been in the room at the time of the sexual assault—about what had happened as well as his reaction to what had occurred. He also testified about the steps he and his roommates took that morning to confirm that someone had indeed entered the fraternity house. Likewise, A.G. testified about speaking to the investigating officer regarding the sexual assault. Additionally, A.G. testified regarding his emotional reactions both during the assault as well as in the days and weeks thereafter.

In *State v. Whitesell*, the parents and friends of a sexual assault victim—as well as law enforcement officers—testified at trial regarding statements she had made even though she had not yet testified. The defendant objected on the ground that this evidence

7

was offered to bolster the victim's testimony and that he was prejudiced because he could not cross-examine the victim until after 20 prosecution witnesses had already testified at trial. On appeal, the Kansas Supreme Court found that "[t]he statements were not offered to bolster [the victim's] credibility because they were not offered to assert the 'truth of the matter asserted' but to give the jury an idea as to [the victim's] state of mind and her emotional reaction to [the defendant's] actions towards her." 270 Kan. at 290. Further, the *Whitesell* court disagreed with the defendant's characterization of the prior testimony as unfairly corroborative, concluding instead that the testimony was offered "to show the subjective substantial emotional distress" of the victim. 270 Kan. at 290.

We find the challenge made to the State's evidence in this case to be substantially similar to the challenge made by the defendant in *Whitesell*. At trial, Bagley objected to the testimony of Ryan, T.J., and the investigating officer, arguing that any testimony regarding A.G.'s statements about the assault was impermissible based on both hearsay and constituted improper witness bolstering. After Bagley's objections were overruled, these witnesses testified that A.G. was "upset," "distraught," "very angry," and "traumatized" on the morning of the sexual assault. In addition, the witnesses recounted the description of the assault reported to them that morning.

Consequently, we do not find the testimony about which Bagley complains to constitute inadmissible hearsay nor improper bolstering of the victim's testimony by the State. Rather, like *Whitesell*, we find that this testimony was presented by the State as substantive evidence regarding A.G.'s state of mind on the morning of the sexual assault as well as his emotional reaction to it. In addition, the testimony also established why the roommates reviewed the fraternity house's security video and why the Riley County Police Department opened a criminal investigation. Thus, we conclude that the district court did not abuse its discretion because the testimony in question had sufficient probative value to be admitted into evidence, even though A.G. had not yet testified at trial.

8

*Order in Limine*

Next, Bagley contends that the district court erred by allowing the State to introduce evidence that the parties had previously agreed to exclude. Specifically, Bagley notes that the parties agreed prior to trial to not present evidence relating to his prosecution in Missouri. As such, Bagley objects to the State's trial reference to evidence obtained from a search of his cell phone during the Missouri criminal investigation. According to Bagley, that evidence was subject to an order in limine and, thus, should have been excluded at trial. In response, the State contends that the evidence was not subject to an order in limine, that Bagley opened the door, and that any possible error was harmless.

Prior to trial, Bagley filed a motion in limine to preclude the presentation of evidence at trial regarding prior bad acts under K.S.A. 2020 Supp. 60-455. The district court held a hearing on the motion in which both parties agreed that the State did "not plan on putting in the priors from Missouri unless the defense opens that door." Notably, neither the motion nor the parties' discussion at the hearing addressed the exclusion of evidence that did not qualify as prior bad acts evidence. Likewise, the order in limine entered by the district court only excluded "K.S.A. 60-455 evidence . . . unless the Defendant testifies and opens the door to the admission of said evidence."

At trial, Bagley testified on direct examination that he met A.G. through the phone app Tinder and indicated that he often made plans to meet people through Tinder or Snapchat. On cross-examination, the State asked Bagley whether he had a copy of the conversation he allegedly had with A.G. on Tinder. In response, Bagley testified that he deleted Tinder from his cell phone in 2018. The State then questioned why Bagley—after being charged in this case with aggravated criminal sodomy—would delete messages that would have purportedly shown that he had a relationship with A.G. Bagley responded

9

that he was not thinking about that at the time he deleted the Tinder app from his cell phone.

On redirect examination, Bagley testified that he had several sexual encounters with men while a student at Kansas State University. According to Bagley, he would delete conversations because he did not want his friends to see them. Before conducting recross-examination, the State requested a bench conference and requested to be allowed to ask Bagley about sexually graphic pictures of nude men on his cell phone. The photos had been discovered on his phone during the criminal investigation in Missouri.

Over objection of defense counsel, the district court granted the State limited permission to ask Bagley about the pictures of nude men found on his cell phone. The State then briefly questioned Bagley without mentioning the Missouri criminal investigation. Specifically, the State asked Bagley the following:

"Q. Mr. Bagley, you just testified, when your counsel was asking you questions, about the fact that you maybe delete some of these messages off your Tinder so that your friends that would look at your phone wouldn't know. Do you remember that testimony?

"A. Yes.

"Q. Okay. So, you were so concerned about your friends looking at that that you would delete them?

"A. Yes.

"Q. But yet, when your phone was downloaded, there was sexually graphic photos of naked men that weren't deleted, correct?

"A. That is correct."

10

Again, we find it to be significant that no questions were asked about how the photos from Bagley's cell phone were obtained. Rather, the State simply verified that although Bagley claimed to delete his Tinder conversations with men, he did not delete the "sexually graphic photos of naked men." Likewise, we note that simply having sexually graphic photos of adults on a cell phone is not—in and of itself—a crime or a prior bad act from a legal perspective.

It was not until the sentencing hearing that Bagley first argued that the State's questions about the photos of nude men may have violated the district court's order in limine. At that time, defense counsel argued that the questions were improper because they "touched on the Missouri cases and the Missouri investigation which was not being allowed as part of this trial." In denying Bagley's challenge to the evidence, the district court explained:

> "The Court did reach the determination that the defendant opened the door in his testimony and that allowed a basis for limited inquiry . . . . [T]he Court did not give the State full opportunity to delve into the photographs but made inquiry of where the State intended to go. My recollection was it was limited to a . . . specifically tailored area that I had thought was consistent with the opening of the door . . . and for those limited purposes and was restricted in that sense. Given those safeguards, the Court maintains its ruling it made to the objection that was presented . . . ."

On appeal, Bagley appears to have dropped his original objection—which was that he did not have access to the cell phone or information relating to it at trial. Of course, because it was his own cell phone, he could testify from memory regarding what he recalled had and had not been deleted. If he did not recall, he could have so testified. Regardless, we deem the argument regarding not having access to his cell phone or information relating to it at trial to have been waived. Issues not adequately briefed are deemed waived or abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

11

Instead, Bagley's argument on appeal is that the State's inquiry regarding the failure to delete sexually explicit photos of nude men from his cell phone violated the district court's order in limine. It is Bagley's burden to prove that the district court erred and to establish that any error caused substantial prejudice. See *State v. Green*, 245 Kan. 398, 404, 781 P.2d 678 (1989). In other words, Bagley must show that the order in limine was violated, and that the violation prejudiced his right to a fair trial. Based on our review of the record on appeal, we find that Bagley has failed to establish either a violation or substantial prejudice.

Significantly, the district court's order in limine only prohibited the introduction of evidence that qualified as evidence of prior bad acts. On its face, K.S.A. 2020 Supp. 60-455 regulates the admission of "evidence that a person committed a crime or civil wrong on a specified occasion . . . ." This rule of evidence simply has no application to evidence of acts that do not constitute crimes or civil wrongs. Furthermore, because the evidence presented by the State did not involve a prior crime or civil wrong, it was not subject to the order in limine.

As discussed above, in its limited inquiry of Bagley regarding the photos found on his cell phone, the State did not mention the Missouri criminal investigation or cases. It simply asked if there were "sexually graphic photos of naked men that weren't deleted" and Bagley acknowledged that there were. This limited inquiry did not delve into whether Bagley had committed a prior crime or civil wrong. Likewise, the limited inquiry did not reference any criminal acts or civil wrongs committed in Missouri.

Finally, even if the evidence in question was subject to the district court's order in limine, it is important to recognize that such an order is interlocutory or provisional in nature and is subject to modification during the trial. See *State v. Crume*, 271 Kan. 87, 100-01, 22 P.3d 1057 (2001). As such, the district court had the authority to modify the order in limine based on how the evidence was presented at trial. Further, we find no

error in the district court's decision to permit limited inquiry regarding the photos that remained on Bagley's phone after he had testified that he deleted his Tinder account because he did not want his friends to see the conversations he had with men. Accordingly, we conclude that the district court did not err in allowing the State to ask Bagley about the sexually explicit photographs of nude men that remained on his phone after he allegedly deleted his Tinder account.

*Prosecutorial Error*

Bagley also contends that the prosecutor erred during closing arguments by making several statements that he claims prejudiced his right to a fair trial. In response, the State concedes that the prosecutor misstated the evidence on one occasion but that the error was harmless. Regarding the other alleged errors, the State contends that the prosecutor did not commit error and that his closing argument was within the wide latitude allowed under Kansas law.

We apply a two-step analysis to claims of prosecutorial error. First, we must determine if an error occurred. Second, if an error occurred, we must determine whether the error resulted in prejudice. *State v. Patterson*, 311 Kan. 59, 70, 455 P.3d 792, *cert. denied* 141 S. Ct. 292 (2020). In determining error, we are to consider whether the "prosecutor's actions or statements 'fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.'" 311 Kan. at 70. Furthermore, we must keep in mind that prosecutorial error is harmless if the State proves beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record. See *State v. Blansett*, 309 Kan. 401, 412, 435 P.3d 1136 (2019).

First, Bagley argues that the prosecutor made an impermissible "straw man" argument during closing argument by suggesting that Ryan's girlfriend was the

unidentified woman Bagley allegedly encountered while in A.G.'s bed in the early morning hours of September 9, 2017. "A straw man argument is where the arguer wishes to respond to an argument of his or her choosing and not one that is actually presented." *State v. Smith*, No. 107,447, 2013 WL 1688924, at \*3 (Kan. App.) (unpublished opinion), *rev. denied* 298 Kan. 1207 (2013); see also *Walsh v. Weber*, No. 113,972, 2016 WL 4750102, at \*11 (Kan. App. 2016) (unpublished opinion). Because Bagley never testified that Ryan's girlfriend was the woman he encountered, he argues that the prosecutor made up a fallacious argument in which to respond.

Specifically, the prosecutor argued during closing:

"He's able to find [A.G.'s] bed and have a threesome. With whom, I ask you? With whom? We know that that young lady right there [A.G.'s date] left and she was gone at approximately 2 to 3 o'clock that morning. She wasn't in that room. The only other lady that was in that room was [Ryan's girlfriend]. And you have to ask yourself, do you believe her? Do you believe what she said, that she did not have oral sex with Devonta and with [A.G.]? I mean, she told you the only time that she got up is when she had to go to the bathroom. You heard from Ryan and he said, she's sleeping against the wall, she never crawled over me. Do you really think she was going to do that to her boyfriend, to her friend [A.G.'s girlfriend]? Do you really think she's going to do that right there when witnesses could see that happening? And more importantly, ladies and gentlemen, do you really think a threesome happened? Do you really think a threesome happened in that bed that's about the size of this (attorney indicating) table, that they can comport their bodies in different ways? Is that what you believe? Because the evidence doesn't support that, ladies and gentlemen."

We find that this was a fair argument based on the evidence presented at trial as well as the reasonable inferences that could be drawn from that evidence. It was Bagley's defense that a woman was there when he entered the sleeping room and together they performed oral sex on A.G. The State had the right to respond to this defense by pointing to the evidence regarding the only woman in the room at the time and her denial that she

14

did not get into A.G.'s bed or perform oral sex on him. Significantly, the State did not argue that Bagley testified that it was Ryan's girlfriend that he allegedly encountered in A.G.'s bed. Instead, the State argued that, by process of elimination, the only woman it could have been was Ryan's girlfriend; and, if it was not her, then Bagley's version of the events was not plausible. We find the State's argument in this regard to be reasonable based on Bagley's defense and to be within the State's wide latitude in crafting closing arguments. See *State v. Pribble*, 304 Kan. 824, 832, 375 P.3d 966 (2016).

Second, Bagley argues that the State made an impermissible "golden rule" argument during closing argument. A "golden rule" argument is one "that encourages the jurors to place themselves in the position of a victim or a victim's family member." *State v. Thomas*, 311 Kan. 905, 911, 468 P.3d 323 (2020). Such arguments "'encourage the jury to decide the case based upon personal interest or bias rather than neutrality.'" *State v. Lowery*, 308 Kan. 1183, 1208, 427 P.3d 865 (2018). As a result, these arguments may constitute prosecutorial error because they can "'inflame the passions or prejudices of the jury'" or "'divert the jury from its duty to decide the case based on the evidence and the controlling law.'" 308 Kan. at 1208-09.

When read in context of defense counsel's argument during closing, we find no error in the State's argument. During the closing argument presented by defense counsel—which preceded the State's argument in rebuttal of which Bagley complains—Bagley's counsel argued:

> "I think some of us, I don't know, it's hard to say if you're not put in the position, but some of us might physically and probably attack, scuffle with the intruder or something like that. That never happened. Some of us might be surprised and yell out, scream. It never happened. Some of us might actually think about it and know our buddy is there and yell their name, yell for help. It also never happened. Some of us just kind of cause a ruckus, in general. It never happened. He tells us that there is 15 to 20 seconds, which is a long time in this kind of situation, where the two of them were just—he's on the bed, the

15

guy is standing there and nothing is happening at all. No one is saying anything, no one is doing anything and he just sits in the bed for five minutes. But even if you think about okay, he was in shock at the time, here's where it gets really weird. Alright. He knows that the guy left the room, in fact into that party room, but he doesn't know if he left the building. And he said, I thought the guy might have still been there. Here's where it gets strange. . . . [D]oes he warn anybody? No. He's got his phone, does he text anybody? No. Does he call the police? No. Here's where it gets even more weird. According to him, he waits for [Ryan's girlfriend] to leave the room. So he's waiting for [Ryan's girlfriend] to go out into the building where he thinks potentially there might be an intruder, a burglar, someone who is sexually assaulting people. Hey, go to the bathroom by yourself. Okay, Ryan, you might want to walk her down there. Let's just have her go by herself. Does that make sense? He walks out into the hallway and you can see it on the video. He makes a couple of trips out there in the hallway. And on his first one, I ask you to watch it because the first time he walks out there he doesn't look too worried. In fact, if anything, he's got a little bounce in his step. He was looking for someone and he doesn't look real hard because it's less than a minute that he's out there. And then he goes back and he comes out a second time and now he does look worried, he's kind of doing this (attorney demonstrating) with his hair when he walks by the camera. We got to ask ourselves, what happened in-between the first time and the second time? I don't know. I can't tell you exactly what happened in that room. And then we know that he goes back to sleep and this is another puzzling aspect of this case. Ryan and TJ tell you that he's so distraught, we saw his countenance, we knew that he was upset and so our solution to that is let's all go back to sleep. . . . [I]f [A.G.] isn't acting and all of his friends acting like someone would of a sexual assault just happened, we have to find [Bagley] not guilty."

In rebuttal, the State made the following argument in response to defense counsel's closing:

"[A.G.] woke up from a drunken stupor, where he was asleep, he had drank the night before, and he woke up to a man sucking on his penis. And he's in shock, he's in awe, he curls up against the wall. And then the defense wants to come up here and say is that natural? Well ask yourselves, what would you do? What would you do? I mean, yeah, maybe you would punch. You would like to say that right now. You would like to say you would fight. But when you're in that situation, what would you do? In that 10 to 15

seconds that he talked about, who knows whether it was 10 to 15 seconds, it may have seemed like a lifetime to him. So what he did tell you, ladies and gentlemen, is that he laid on that bed and he was—he thought it was real, he thought it was vivid, but he didn't know. And it kept—it kept bothering him and he didn't want to wake up Ryan because of his girlfriend. And she did go to the bathroom and that's when he woke [Ryan] up. That's reasonable, don't you think?"

There is little distinction between defense counsel's argument and that of the State. Although it would have been better practice for the prosecutor not to have phrased his response to defense counsel's argument in the form of questions, both attorneys were attempting to get the jurors to exercise common sense based on their experiences to weigh A.G.'s credibility in light of the testimony at trial. This is consistent with the district court's instructions to the jurors, which provided:

"Statements, argument, and remarks of counsel are intended to help you in understanding the evidence and applying the law, but they are not evidence. If the attorneys make any statements that are not supported by evidence, those statements should be disregarded.

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

"Particularly when a case turns on which of two conflicting stories is true, parties may advocate for reasonable inferences based on evidence suggesting that certain testimony is not believable. The jury, however, must be left to draw the ultimate conclusions on witness credibility. [Citations omitted.]" *State v. Hart*, 297 Kan. 494, 505-06, 301 P.3d 1279 (2013). Here, the jurors were appropriately instructed that, "In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, admissions, or stipulations of the parties, and any admitted exhibits. You must disregard any testimony or exhibit which I did not admit into

17

evidence." We presume that the jurors followed these instructions and no argument has been made to the contrary. See *State v. Gray*, 311 Kan. 164, 172, 459 P.3d 165 (2020).

Based on our review of the record, we find that the prosecutor's argument was made in direct response to the argument presented by defense counsel. We also find nothing to suggest that the prosecutor's argument inflamed the prejudices of the jury or distracted the jurors from their duty to base their verdict only on the evidence presented at trial. Consequently, under the circumstances presented, we do not find that the State presented an impermissible "golden rule" argument.

Third, Bagley contends that the State disparaged defense counsel and appealed to the sympathies of the jurors during closing. He focuses on the State's closing argument that "[t]he defense wants to come in here and put [A.G.] on trial and tell all of you that [A.G.] has his story and it's changed, it's evolved, and it's everything." Bagley argues that this statement "implies that it was wrong and cruel to challenge A.G.'s testimony and present a counter-narrative." In response, the State contends that Bagley's argument is without merit and that he reads too much into the statement.

Arguments that disparage the defense or the role of defense counsel may constitute prosecutorial error depending on the circumstances presented. See *State v. Knox*, 301 Kan. 671, 684, 347 P.3d 656 (2015) ("The prosecutor's statement that it was defense counsel's job to 'make [the witnesses] look like liars' disparaged the role of defense counsel in the adversarial process."). Prosecutors may comment on the evidence and on trial tactics used by the defense but cannot disparage defense counsel. See *State v. Crum*, 286 Kan. 145, 150, 184 P.3d 222 (2008). Here, when viewed in context with the prosecutor's entire closing argument, we do not find that he improperly disparaged the defense counsel.

Notably, the statement in question was just one sentence of a total of 18 pages of closing arguments presented by the State. It is also significant that, immediately following the statement, the prosecutor stated, "Well ladies and gentlemen, you know that's not accurate." The prosecutor then proceeded to attempt to show from the evidence why the jury should believe A.G.'s version of the events in the early morning hours of September 9, 2017. When read in context, we find the statement to fall within the wide latitude given to a prosecutor in making closing arguments. In particular, we find the statement to be a legitimate argument in light of Bagley's trial defense that A.G.'s version of the events was not true and that the encounter was actually consensual in nature.

Fourth, Bagley contends that the State misstated his testimony during closing arguments. In particular, Bagley points out that the prosecutor mistakenly stated that he testified he never had sexual encounters at his own fraternity house. However, Bagley testified that he had discretely engaged in sex with men in his room when he was living at a different fraternity house and while he was a student at Kansas State. In response, the State candidly admits its error but argues that it did not prejudice Bagley's right to a fair trial.

Because the State has admitted to violating the first prong of the prosecutorial error test, we will turn to the second prong to determine whether the misstatement resulted in prejudice. See *State v. Chandler*, 307 Kan. 657, Syl. ¶ 9, 414 P.3d 713 (2018). We note that immediately after the prosecutor misstated evidence and defense counsel objected, the district court informed the jurors to rely on their own memories of the testimony. Further, as discussed previously, the jurors were instructed by the district court to base their verdict only on the evidence presented at trial and not on the arguments of counsel, particularly when such arguments were not supported by evidence. As such, we conclude that there is no reasonable probability that the State's misstatement contributed to the verdict.

19

*Cumulative Error*

For his final argument, Bagley contends that the jury's verdict should be reversed due to cumulative error. Cumulative trial errors, when considered together, may require reversal of a defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). Here, we have found that only one error occurred. Specifically, that the prosecutor misstated the evidence during closing when he stated that Bagley did not have sexual encounters in his room while living in another fraternity house when he was college. As our Supreme Court has held, one error is insufficient to establish cumulative error. *State v. Lemmie*, 311 Kan. 439, 455, 462 P.3d 161 (2020). Consequently, we conclude that there is not cumulative error in this case.

*State's Cross-Appeal*

In its cross-appeal, the State contends that the district court erred in granting Bagley's challenge to his criminal history score. A de novo standard of review is used when determining whether a district court properly calculated a criminal history score before imposing sentence under the Kansas Sentencing Guidelines Act (KSGA). In addition, the classification of prior convictions involves statutory interpretation of the revised KSGA, K.S.A. 2020 Supp. 21-6801 et seq., and presents a question of law over which we have unlimited review. *State v. Bradford*, 311 Kan. 747, 750, 466 P.3d 930 (2020). Whenever possible, we are to discern the meaning of a statute based on its plain language. *State v. Pattillo*, 311 Kan. 995, 1004, 469 P.3d 1250 (2020). In addition, in making the comparison between the offenses, it is appropriate to consider not only the plain language of the statute, but also the relevant statutory definitions and the interpretation of the statutory elements in state judicial opinions. See *State v. Gensler*, 308 Kan. 674, 683-85, 423 P.3d 488 (2018).

Although the Kansas Legislature amended K.S.A. 21-6811(e)(3) in 2019 to clarify when a crime should be classified as a person or nonperson crime, Bagley committed his crimes of conviction in 2017. As such, we must review Bagley's criminal history score under the "identical or narrower" test set forth by the Kansas Supreme Court in *State v. Wetrich*, 307 Kan. 552, 412 P.3d 984 (2018).

The State asks us to find that the United States Supreme Court's decision in *Quarles v. United States*, 587 U.S. __, 139 S. Ct. 1872, 204 L. Ed. 2d 200 (2019), undermines the *Wetrich* test. Nevertheless, the State candidly concedes that the elements of the Missouri sodomy statutes under which Bagley was convicted are broader than the elements of the Kansas offenses of aggravated criminal sodomy and aggravated sexual battery. In addition, the State recognizes that both our court and the district court are duty bound to follow the precedent of the Kansas Supreme Court absent some indication that the court is departing from its previous position. *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

Certainly, we agree that "[i]t is only in a world of legal fiction that rape [or sodomy] could possibly be deemed anything but a person crime." *State v. St. John*, No. 119,310, 2019 WL 3367362, at *13 (Kan. App. 2019) (unpublished opinion) (Bruns, J., dissenting). We also acknowledge the logical disconnect when certain offenses inherently involving people—including rape, sodomy, kidnapping, and homicide—may be considered nonperson crimes under a *Wetrich* analysis. However, we simply do not have any indication that the Supreme Court is departing from *Wetrich* at this point in time.

In the alternative, the State asks that we compare Bagley's Missouri felony convictions for sodomy in the first degree to the Kansas misdemeanor battery statute. Under *Wetrich*, the district court was tasked with comparing the elements of the Missouri first-degree sodomy statute with the elements of a comparable Kansas crime at the time Bagley committed the crimes in this case. We find that comparing the elements of the

21

Kansas misdemeanor battery statute—K.S.A. 2017 Supp. 21-5413(a)(2)—to the Missouri felony first-degree sodomy statute—Mo. Rev. Stat. § 566.060—would only create another legal fiction because the two statutes proscribe vastly different types of criminal conduct.

Accordingly, we find no error in the district court's classification of Bagley's Missouri convictions as nonperson felonies for the purposes of determining his criminal history score as it currently exists. For the same reason, we also find no error in the district court not applying the aggravated habitual sexual offender statute—K.S.A. 2017 Supp. 21-6626(a)—when sentencing Bagley. Accordingly, we affirm Bagley's convictions as well as his sentence.

Affirmed.